# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **DEBBIE B. WHITE, et al.,** | } |
| **Plaintiffs,** | } |
| v. | } Case No.: 2:18-cv-01844-RDP |
| **WALGREEN CO.,** | } |
| **Defendant.** | } |

## **MEMORANDUM OPINION**

This case is before the court on Plaintiffs' Motion for Partial Summary Judgment (Doc. # 44) and Defendant's Motion for Summary Judgment (Doc. # 53). The Motions have been fully briefed (Docs. # 45, 47, 53, 54) and are ripe for review. After careful review, and for the reasons stated below, Plaintiffs' Motion (Doc. # 44) is due to be denied, and Defendant's Motion (Doc. # 53) is due to be granted in part and denied in part.

## I.    Relevant Undisputed Facts[1]

This is a slip-and-fall case. On Friday, March 30, 2018, Plaintiff Debbie White ("Mrs. White") visited Walgreens store number 7791 to buy moisturizer. (Doc. # 47-6 at 34). The store is located at 101 Doug Baker Boulevard in Birmingham, Alabama. (Doc. # 18 at 3, ¶ 6). Mrs. White had frequented store 7791 many times before. (Doc. # 47-6 at 29).

On March 30, when Mrs. White visited, store 7791 had on display (as it does on a regular basis) a large A-frame sign that advertised promotional deals. (Doc. # 47-6 at 37). Every one of

---

[1] The facts set out in this opinion are gleaned from the parties' submissions and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Walgreens' 8,600 nationwide stores utilizes A-frame signs. (Doc. # 47-1 at 26, 29). Walgreens' Merchandising Guide (a/k/a its Customer Plan) contains guidelines that instruct employees where to place these A-frame signs. (Doc. # 47-1 at 29-30). Generally, the morning shift lead or the morning cashier would place the A-frame sign in the designated area upon store opening, which is in front of the main entrance on the corner of the sidewalk. (Doc. # 45-3 at 2; Doc. # 47-1 at 60-61; Doc. # 47-3 at 192). On the morning at issue, Alex McGrady and Jordan Morrow opened the store and placed the A-frame sign in its designated area.[2] (Doc. # 45-3 at 2; Doc. # 47-3 at 193).

Walgreens' Customer Plan also contained certain instructions for using the A-frame sign. For example, if severe weather occurred, employees were to move the A-frame sign inside or "weigh[] [it] down using the sand ballast." (Doc. # 45-4 at 2). It is undisputed that on March 30, 2018, the A-frame sign used at store 7791 was not weighed down with sand. (Doc. # 45 at 3). However, it was not common for a sign to be weighted with sand. (Doc. # 47-1 at 32; Doc. # 47-3 at 145). Rachel Lord, the Store Manager, and James Terry, the District Manager who oversaw fifteen stores (including store 7791), testified that they have never known an A-frame sign to be weighed down with sand. (Doc. # 47-1 at 32; Doc. # 47-3 at 145).

March 30, 2018 was a sunny Friday afternoon. (Doc. # 47-6 at 34). Mrs. White does not remember seeing the A-frame sign as she entered the store. (Doc. # 47-6 at 46). She was only in the store for five minutes or so. (Doc. # 47-6 at 42). While she was inside, the sign fell to the ground. (Doc. # 45-6 ("Sign Falls") at 15:23:31-32). Two individuals (alleged to be Walgreens' employees) exited the store after the sign fell, but before Mrs. White tripped over it; they did not pick up the sign. (Doc. # 47-1 at 165-66; Doc. # 45-7). Unfortunately, when Mrs. White exited,

---

[2] Defendant's employees are certain the sign was placed in the appropriate location on the morning of March 30, 2018 because Rachel Lord, the store manager, arrived at the store around 8:00 a.m., saw the sign, noticed it was crooked, and adjusted it. (Doc. # 47-1 at 131).

2

she "slipped or [fell] on something that caused [her] to lose complete control of [her] body and land on the concrete." (Doc. # 47-6 at 51). Mrs. White does not remember seeing the A-frame sign until she was "laying on the ground and saw it at [her] feet." (Doc. # 47-6 at 43, 51). She testified that the sliding doors blocked her view of the A-frame sign as she was exiting the store. (Doc. # 47-6 at 46). She also testified that she was distracted by a white car that was passing by the store at the moment she was exiting. (Doc. # 47-6 at 48-49). There is video footage of the incident. (Doc. # 45-6 ("Debbie's Fall") at 15:25:47-50). The angle of the camera is from inside the store and Mrs. White's back was to the camera as she walked through the exit door. (*Id.*). The video seems to show Mrs. White looking down (perhaps to put away a receipt, money, or payment card), but the video is not clear enough to form the basis of any Rule 56 finding.

After she fell, Mrs. White spoke with another customer who called the paramedics and her husband. (Doc. # 47-6 at 56-57). Kyle Thrush (Assistant Manager) notified Sydney Darabaris (cashier) of Mrs. White's fall, and Darabaris called 911. (Doc. # 45-12 at 2, ¶ 6). Mrs. White testified that, to her knowledge, she did not speak with any Walgreens' personnel after her fall. (Doc. # 47-6 at 57-58). Mrs. White's husband arrived fairly promptly and took her to the emergency room. (Doc. # 47-6 at 58). At some point after the accident, Thrush removed the A-frame sign from the ground and placed it over a railing outside of the store.[3] (Doc. # 47-6 at 97).

As a result of the fall, Mrs. White fractured two bones in her left foot, and she fractured her humorous bone in four places, which required her to undergo a reverse shoulder replacement. (Doc. # 47-6 at 59-60, 71). Lord was notified of Mrs. White's fall and immediately called Sedgwick, a third-party vendor that handles customer and/or employee injuries while on Walgreens' premises. (Doc. # 47-1 at 20). As of September 2017, Walgreens' policy on customer

---

[3] There is Rule 56 evidence indicating that the A-frame sign had often been placed over this railing during hours of operation, rather than beside the door. (Doc. # 47-3 at 139-40; Doc. # 47-6 at 36).

3

injuries required store leadership (in this instance, Lord) to "gather the following information regarding the incident" and send it to Sedgwick: (1) customer information; (2) date and time of incident; (3) description and cause of incident; (4) witness information; (5) weather conditions; and (6) the type of shoes worn by the customer. (Doc. # 45-11 at 2). Once Sedgwick was called, a "claim number" would be assigned, which is used to reference the injury/incident. (Doc. # 45-11 at 2). "After the information [is] . . . provided to Sedgwick, the store leader must [permanently] dispose of any document containing customer information." (Doc. # 45-11 at 2). The store leader must also "provide and preserve video of the actual incident . . . as well as the customer entering and exiting the store" and take pictures of the site of the incident using the store's "passport camera." (Doc. # 45-11 at 3). Video of Mrs. White's fall contains footage recorded an hour before the accident and an hour after the accident. (Doc. # 47-3 at 131).

When Lord called Sedgwick, she did her "best to provide the answers" to the questions the representative asked. (Doc. # 47-1 at 62). She did not conduct her own investigation or take any notes, as that is "not [her] role" but rather is Sedgwick's. (Doc. # 47-1 at 63). Sedgwick gave Lord a claim number and requested video footage from an hour before and an hour after the incident. (Doc. # 47-1 at 133). Lord then sent the pertinent video footage to Sedgwick. (Doc. # 47-1 at 134). Lord testified that "everything Sedgwick didn't ask [her] to burn [that is, save and produce] or that [she] didn't choose to burn was not preserved;" so, there is at least some security footage from March 30, 2018 that was not preserved. (Doc. # 47-1 at 140). Lord notified her supervisor that she had called Sedgwick, but he did not ask any follow-up questions. (Doc. # 47-1 at 217).

On April 10, 2018, Plaintiffs' attorney sent both Walgreens and Sedgwick a letter of representation. (Doc. # 45-10). The letter requested that "Walgreens put a litigation hold on any and all evidence and/or data in its possession, custody, or control[] relating in any way to [Mrs.

White's] fall and resulting injuries." (Doc. # 45-10 at 3). On May 16, 2018, Plaintiffs' attorney sent another letter to Walgreens. (Doc. # 45-10 at 4). Plaintiffs assert that, as of the filing of their Motion for Partial Summary Judgment, no photos, written information, or outside video footage had been produced, notwithstanding the "litigation hold" letters. (Doc. # 45 at 8).

On November 7, 2018, Plaintiffs filed the initial Complaint. (Doc. # 1). On June 5, 2019, Plaintiffs filed an Amended Complaint. (Doc. # 18). Plaintiffs advance three claims: (1) negligence; (2) wantonness; and (3) negligent or wanton failure to hire, train, and supervise.[4]

## II.     Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56 requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("*Anderson*"). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v.*

---

[4] Neither Plaintiffs nor Defendant moved for summary judgment on Plaintiffs' claim for negligent or wanton failure to hire, train, and supervise (Count Three). Therefore, because Plaintiffs' claim for negligence will proceed to trial, their claim for negligent or wanton failure to hire, train, and supervise is also due to proceed.

*Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252.

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

The Eleventh Circuit has interpreted *Celotex* to require that, as to issues on which the movant would bear the burden of proof at trial, a

> party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial. In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party. If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the non-moving party, in response, come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.

*Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (quoting *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

### III.   Analysis

Currently under submission are the parties' cross-motions for summary judgment. The court addresses each motion, in turn.

#### A.   Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs assert that they are entitled to judgment as a matter of law on their negligence claim, and that, as a result of Defendant's alleged spoliation of evidence, they are entitled to an "adverse inference of culpability." Plaintiffs' arguments are not based on the facts of the case; rather, they briefly recite the law of premises liability in the "business invitee" context and the law of spoliation. Plaintiffs contend that the law "clearly" establishes Defendant's negligence. They also contend that the law "clearly" justifies the imposition of spoliation sanctions, and that an inference of guilt or negligence should apply on summary judgment. Neither of Plaintiffs arguments carry the day.

##### 1. Negligence

Plaintiffs assert that they are entitled to judgment as a matter of law on their negligence claim. But, Plaintiffs have not argued any facts supporting this assertion. A bare recitation of

7

substantive law, completely detached from the facts of a case, does not, in any way, entitle a movant (here, Plaintiffs) to summary judgment. Additionally, as discussed more fully below, there is a genuine issue of material fact regarding whether the fallen A-frame sign was "open and obvious"; therefore, this issue must be resolved by a jury, not the court.

Therefore, Plaintiffs' Motion for Partial Summary Judgment (Doc. # 44) is due to be denied to the extent they seek summary judgment on the liability portion of their negligence claim.

### 2. Spoliation

Plaintiffs contend that they are entitled to an adverse inference of guilt and/or negligence against Defendant at this stage of the litigation due to Walgreens' purported spoliation of evidence. "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009) (quotation and internal quotation marks omitted); *see Wal-Mart Stores, Inc. v. Goodman*, 789 So. 2d 166, 176 (Ala. 2000) ("One can prove spoliation by showing that a party purposefully or wrongfully destroyed a document that the party knew supported the interest of the party's opponent.").

Here, Plaintiffs request that the court apply an adverse inference of guilt and/or negligence against Defendant because it, allegedly, did not produce all the requested documentation and video footage. However, to the extent Plaintiffs contend that the court should grant summary judgment as a spoliation sanction, that contention is without merit. Summary judgment is an appropriate sanction for spoliation of evidence "only if there is a finding of bad faith, determined by weighing the degree of the spoliator's culpability and prejudice to the opposing party, and only if no lesser sanction will suffice." *Ray v. Ford Motor Co.*, 792 F. Supp. 2d 1274, 1279 (M.D. Ala. 2011) (quoting *Greyhound Lines, Inc. v. Goodyear Tire & Rubber Co.*, 2009 WL 798947, *2 (M.D. Ala.

Mar. 25, 2009)) (internal quotation marks omitted). On this record, Plaintiffs have failed to show bad faith and/or malice on the part of Defendant. Further, there is little to no showing of culpability. And, Plaintiffs have not shown how they have been prejudiced as a result of "some" video footage being taped over or "some" documentation not being produced. Finally, Alabama law provides that such an inference is not to be applied at summary judgment; it is properly given (if at all) as a jury instruction at trial. *See Hartung Comm. Props., Inc. v. Buffi's Auto. Equip. & Supply Co.*, 279 So. 3d 1098, 1107 (Ala. 2018) (Mendheim, J, concurring specially) ("The right to a jury instruction as to an evidentiary inference to be drawn from spoliation has long been acknowledged."); *see Cox v. Target Corp.*, 351 F. App'x 381, 384 n.1 (11th Cir. 2009) ("In *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939 (11th Cir. 2005), this court held that a sanction in accordance with principles of federal spoliation law was a jury instruction raising a presumption against the spoliator.").

Consequently, Plaintiffs are not entitled to spoliation sanctions (*i.e.*, an adverse inference of guilty and/or negligence) on summary judgment. The parties will have another opportunity to address spoliation at the pre-trial conference.

### B.     Defendant's Motion for Summary Judgment

Defendant has moved for summary judgment on Plaintiffs' claims of negligence and wantonness. (Doc. # 18). Defendant asserts that its affirmative defense (*i.e.*, the fallen A-frame sign was "open and obvious") warrants dismissal on summary judgment. Defendant also asserts that Plaintiffs' wantonness claim fails as a matter of law. The court addresses each argument, in turn.

#### 1. Negligence

In order to recover on a negligence claim, a plaintiff must prove a breach of a duty owed, and that the breach proximately caused injury or damage. *Lowe's Home Ctrs., Inc. v. Laxson*, 655

So. 2d 943, 945-46 (Ala. 1994). Here, it is undisputed that Mrs. White was a business invitee. As a business invitee, Walgreens "owe[d] [Mrs. White] a duty . . . to use reasonable care and diligence to keep the premises in a safe condition, or . . . to give sufficient warning [of a known danger] so that, by the use of ordinary care, the danger can be avoided." *McClurg v. Birmingham Realty Co.*, -- So. 3d --, 2020 WL 502617, *2 (Ala. Jan. 31, 2020) (citation omitted). However, that duty is "obviated" where the danger is "open and obvious"; that is, the duty does not arise where "the invitee . . . should be aware of [the danger] in the exercise of reasonable care." *Id.* (internal citations omitted). "[T]he premises owner bears the burden of proving that the danger was open and obvious." *Id.* (citing *Barnwell v. CLP Corp.*, 235 So. 3d 238, 244 (Ala. 2017)).

Here, a jury may determine that the question of whether the fallen A-frame sign was "open and obvious" is a very close one. But, again, it is Walgreens' burden to establish that defense. *See Mendez v. Walgreen Co.*, 2015 WL 3767218, *8 (N.D. Ala. June 17, 2015) (noting that a "defendant's argument that the condition that caused [the] plaintiff's fall was open and obvious is an affirmative defense, on which it bears the ultimate burden of proof.") (citation omitted). Because the court concludes that reasonable jurors could disagree about that finding, Plaintiffs' negligence claim is properly reserved for resolution by a jury. *See Denmark v. Mercantile Stores Co.*, 844 So. 2d 1189, 1195 (Ala. 2002) ("Whether a condition is open and obvious is generally a question for the jury."); *Ex parte Kraatz*, 775 So. 2d 801, 804 (Ala. 2000) ("[Q]uestions of openness and obviousness of a defect or danger . . . are generally not to be resolved on a motion for summary judgment.") (quotation omitted) (internal quotation marks omitted). Further justifying this conclusion is the fact that this case does not fit neatly into one of the three narrowly-tailored exceptions to this general tenet.[5]

---

[5] The three exceptions are: (1) cases in which the plaintiff has admitted carelessness or subjective knowledge of the condition, . . . (2) cases in which the type of condition was so obviously dangerous as to preclude liability under

Therefore, Defendant's Motion for Summary Judgment (Doc. # 53) is due to be denied as to Plaintiffs' negligence claim. There is a material issue of fact to be decided in this case.

### 2. Wantonness

Under Alabama law, wantonness is "the conscious doing of some act or the omission of some duty while knowing of the existing conditions *and* being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Ex parte Essary*, 992 So. 2d 5, 9 (Ala. 2007) (citing *Bozeman v. Central Bank of the South*, 646 So. 2d 601 (Ala. 1994)) (emphasis in original). *See also* Ala. Code § 6–11–20(b)(3) (1975) (defining wantonness as "[c]onduct which is carried on with a reckless or conscious disregard for the rights or safety of others."). Alabama courts have repeatedly recognized that "wantonness and negligence are qualitatively differently tort concepts[,]" and "wantonness is not merely a higher degree of culpability than negligence." *Ex parte Essary*, 992 So. 2d at 9 (quoting *Tolbert v. Tolbert*, 903 So. 2d 103, 114-15 (Ala. 2004)); *see Powell v. Wal-Mart Stores, East, L.P.*, 2019 WL 1422721, *6 (S.D. Ala. Feb. 12, 2019) ("Negligence is usually characterized as an inattention, thoughtlessness, or heedlessness, a lack of due care; whereas wantonness is characterized as an act which cannot exist without a purpose or design, a conscious intentional act.") (citation omitted).

Here, Plaintiffs contend that Defendant acted with wantonness by not weighing down the A-frame sign with sand, as (they claim) was suggested by Walgreens' policies at the time of Mrs. White's slip and fall. However, both Lord and Terry testified that they had never known these A-frame signs to be weighed down with sand**,** and that they were unaware of another instance at store 7791 in which an A-frame sign had fallen and a customer tripped over it. (Doc. # 47-1 at 32; Doc.

---

any circumstances, . . . and (3) cases in which, under the particular circumstances, no reasonable jury could find that the danger was not open and obvious. *McClurg*, 2020 WL 502617, at *3 (internal citations omitted).

# 47-3 at 74). Further, it is undisputed that March 30, 2018 was a sunny day with minimal to moderate wind. The Rule 56 record is devoid of any suggestion that there was "severe" weather that may have put Defendant on notice that the sign should be moved inside or weighed down with sand. Moreover, the relevant policy included in the Rule 56 record states that the A-frame sign "can also be weighed down using the sand ballast." (Doc. # 54-4 at 2). The use of the word "can" implies that the policy does not *require* this course of action, and deposition testimony in the record supports this interpretation. And, although Plaintiffs point to a May 2019 policy that states that the A-frame sign "*must* be weighed down by placing sand in the ballast of the sign," there is no indication that this was published and in use at the time of Mrs. White's fall. But, even if the May 2019 policy was in place at the time of Mrs. White's fall (and, the undisputed evidence indicates the exact opposite), Plaintiffs have failed to show that, under these circumstances, the failure to weigh down the A-frame sign with sand raises anything other than a simple question of negligence. *See Taylor v. Pezold Mgmt. Assoc., Inc.*, 2015 WL 914906, *5 (M.D. Ala. Mar. 3, 2015) (noting that "[w]hile [the] failure to discover the [dangerous condition] despite [maintenance] efforts may constitute negligence, on this record[] that failure does not establish wantonness on the part of [the defendant].").

Plaintiffs also assert they can show wantonness based on the fact that two employees walked past the sign after it had fallen (1) without picking it up, and (2) before Mrs. White tripped on it. This argument holds no water. Plaintiffs' *allegations* that two employees walked past the fallen sign but did nothing to fix it, without more, are insufficient to survive summary judgment. Merely "representing" a fact to a deponent is not admissible Rule 56 *evidence*. Rather, there are no actual Rule 56 *facts* that demonstrate either the involvement with or knowledge about the fallen sign that can be attributed to these two employees. Indeed, a defendant's "knowledge of a

dangerous condition, prior to the accident, is the most crucial element of wantonness." *Garrison v. Sam's East, Inc.*, 787 F. App'x 627, 630 (11th Cir. 2019) (quoting *Christian v. Kenneth Chandler Const. Co., Inc.*, 658 So. 2d 408, 411 (Ala. 1995)).

First, the Rule 56 record indicates that the time between the sign falling on the ground and Mrs. White tripping on it is less than five (and perhaps only two) minutes. (Doc. # 45-6 ("Sign Falls") at 15:23:31-32; Doc. # 45-6 ("Debbie's Fall") at 15:25:45-47). This is an insufficient amount of time to put Defendant on actual or constructive notice that the sign presented a danger to customers. *See Hose v. Winn-Dixie Montgomery, Inc.*, 658 So. 2d 403, 404-05 (Ala. 1995) (holding that a five- to ten-minute lapse of time between a store employee checking for spills and the plaintiff's fall was insufficient to put the defendant on constructive notice of the spill).

Second, the only Rule 56 evidence implicating these two employees are still photos from the video footage. (Doc. # 45-7). While the identity of the individuals in the photos is uncertain, even assuming both individuals are Walgreens' employees, they exited the store on the opposite side of the fallen sign, and there is no evidence in the Rule 56 record demonstrating that these individuals (or Defendant for that matter) had actual or constructive knowledge of the fallen A-frame sign. To be sure, Kyle Thrush, one of the employees who allegedly walked past the fallen sign, testified that "[w]hen [he] walked out of the store for [his] lunch break, [he] did not notice that the sign had fallen over." (Doc. # 45-12 at 3, ¶ 12). Further, during the deposition of Lord, Plaintiffs' attorney "represented" to Lord that one of the employees (Jordan Morrow) who allegedly walked past the fallen sign without picking it up testified in his deposition (which, curiously, is not included in the Rule 56 record) that he did not see the sign on the ground when he exited the store. (Doc. # 47-1 at 50). Plaintiffs offer nothing to rebut Thrush's or Morrow's

statements or show that they did, in fact, see the fallen sign and ignore it.[6] *See Powell*, 2019 WL 1422721, at *6 (granting summary judgment on the plaintiff's wantonness claim because there was "no evidence indicating that [the defendant] created the alleged hazard or that it had, or should have had, notice of the water [on which the plaintiff slipped] prior to [her] fall").

Thus, there is simply no admissible Rule 56 evidence showing that two of Defendant's employees saw the fallen A-frame sign but did nothing to address it. And again, even if the two employees did, in fact, notice and walk past the sign after it had fallen, Plaintiffs have failed to show that such conduct would be anything more than negligent. *See Moore*, 2010 WL 11565295, at *5 (holding that the defendant's failure to inspect a plastic grate covering a drainage hold may have been negligent, but that there was "no evidence [the defendant] willfully ignored those defects despite the risk of injury they posed"). Thus, the court cannot conclude that, in this situation, Defendant acted with purpose, design, or intention.

Consequently, even viewing the facts in the light most favorable to Plaintiffs, the court concludes that Defendant is entitled to summary judgment on Plaintiffs' wantonness claim.

## IV.  Conclusion

For all the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment (Doc. # 44) is due to be denied, and Defendant's Motion for Summary Judgment (Doc. # 53) is due to be granted in part and denied in part. An Order consistent with this Memorandum Opinion will be entered.

---

[6] In fact, one might say there is some inherent contradiction in Plaintiffs' argument regarding Defendant's "knowledge" of the fallen sign. If, as Plaintiffs maintain, the sign was not "open and obvious" to her as she exited the door right next to it, it is difficult to imagine that two employees -- who exited the store opposite of Plaintiff (that is, through a door that is a few feet farther away from the fallen sign and separated by some type of railing) -- saw the sign but ignored it. (*See* Doc. # 47-1 at 115, 146 (noting a "big metal handle . . . in the middle of the doors"); Doc. # 53-1 at 2).

**DONE** and **ORDERED** this June 25, 2020.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE